F. Patricia CALLAHAN, Appellant,

v.

4200 CATHEDRAL CONDOMINIUM, et al., Appellees.

No. 05–CV–1192.

District of Columbia Court of Appeals.

Argued Oct. 17, 2006.
Decided Aug. 30, 2007.

---

Thomas C. Willcox, Washington, D.C., for appellant.

Brian D. Bichy, with whom Raymond B. Via, Jr., was on the brief, Bethesda, MD, for appellee 4200 Cathedral Condominium.

Eric H. Sayles, Washington, D.C., for appellee 515 D.C., L.L.C.

Before WASHINGTON, Chief Judge, and REID and BLACKBURNE–RIGSBY, Associate Judges.

REID, Associate Judge:

Appellant, F. Patricia Callahan, filed a complaint against appellee 4200 Cathedral Condominium ("4200" or "the Condominium") seeking to enjoin foreclosure of her property. The trial court dismissed her claim without prejudice. Ms. Callahan filed a motion for reinstatement of her claim. The trial court issued an order which conditioned reinstatement of the claim on Ms. Callahan's deposit into the court's registry of $129,491.43, as security for defendant and intervenor, due to her unpaid mortgage and condominium fee payments, and because of her dilatory actions in prosecuting her claim. The order stated that failure to deposit the required amount would result in dismissal of the claim with prejudice. On September 29, 2005, the trial court dismissed Ms. Callahan's complaint with prejudice. Ms. Callahan argues that the trial court improperly dismissed her complaint, whether under Super. Ct. Civ. Rule 59(e) or Rule 60(b). We affirm the judgment of the trial court.

## FACTUAL SUMMARY

The record shows that in July 2003, 4200 began foreclosure proceedings against Ms. Callahan by recording a lien against her condominium unit, number 515, and her parking space, number 43. The Condominium sent a notice of a foreclosure sale to Ms. Callahan on August 18, 2003, and on September 22, 2003, 4200 foreclosed on Ms. Callahan's unit. Ziad Kabbani, on behalf of 515 D.C., L.L.C. ("515 D.C."), acquired Ms. Callahan's property at the September 22, 2003 public auction, subject to her first and second trusts. On September 29, 2003, Ms. Callahan filed a complaint against 4200 to enjoin foreclosure of her property, and later filed a *lis pendens* to enjoin transfer of her property pending the outcome of her lawsuit. Subsequently, on December 19, 2003, the trial court granted Mr. Kabbani's emergency motion to intervene, and tolled the time for resolving the foreclosure action pending the outcome of Ms. Callahan's legal action.

After preliminary motions were resolved, the case proceeded to discovery, preparation of pretrial statements, and the filing of dispositive motions in 2004. The Condominium filed a motion for summary judgment against Mr. Kabbani on July 6, 2004, which intervenor opposed; and the trial court denied the motion on July 30, 2004.[1] On November 17, 2004, 515 DC filed a motion for summary judgment, and on November 29, 2004, 4200 submitted a pleading consenting to and supporting intervenor's motion for summary judgment. On December 3, 2004, the trial court signed an order requiring Ms. Callahan to file her opposition to the pending summary judgment motion,[2] and indicating that sanctions were appropriate since she failed to attend a pre-trial conference, without

1. The trial court granted Mr. Kabbani leave to add or substitute 515 D.C. as a party intervenor, and in response to his motion, the court ordered the substitution on November 15, 2004.

2. Ms. Callahan filed her objection and memorandum in opposition to intervenor's motion for summary judgment on December 3, 2004.

explanation. The court warned that because of Ms. Callahan's "blatant failure to cooperate, the ultimate sanction of dismissal must be considered," but the court delayed that consideration due to "the many admonitions by [this court] that the [trial] court should reject the ultimate sanction and choose a lesser sanction if it is sufficient under the circumstances to address the underlying conduct and any prejudice created by it." The trial court denied intervenor's motion for summary judgment on December 15, 2004. On February 28, 2005, defendant and intervenor filed a joint motion to dismiss Ms. Callahan's action when she failed to attend a second pretrial conference. They alleged dilatory actions on Ms. Callahan's part in an effort to avoid past, present, and future payments of condo fees and monies due on her first trust.[3]

Ms. Callahan not only failed to attend two pretrial conferences, but also did not file an opposition to 4200 and 515 D.C.'s motion to dismiss. As a result, on March 25, 2005, the trial court signed an order dismissing Ms. Callahan's claim, without prejudice, because of her (1) failure, and that of her counsel, to attend two pretrial conferences, without justification of their failure to appear; (2) failure, and that of her counsel, to participate in preparation of the Joint Pretrial Statement; (3) non-payment of monthly condominium fees since June 2003; and (4) non-payment of any trust payments since September 8, 2003 on her condo unit and parking space; "all to the extreme prejudice of both Defendant and Intervenor." This order was docketed on March 30, 2005, and reinstatement of Ms. Callahan's complaint was dependent upon deposit in the court registry of due and owing and future trust and condo fee payments, as well as an additional specified sum "to secure an award attorneys' fees to Defendant and Intervenor as a sanction for Plaintiff's conduct of the litigation to date."

On April 19, 2005, 515 D.C. paid ABN AMRO $32,791.50 for the first mortgage in order to protect its interest in the 4200 Cathedral property. On April 22, 2005, Ms. Callahan filed a *pro se* motion for reinstatement of her claim, without tendering any payment, and requesting clarification of the "specific amount of payment for any outstanding condominium fees." The trial court issued an order on June 8, 2005, stating that it was again mindful of the legal principle that adjudication on the merits is preferred, and ordering 4200 and 515 DC to submit and mail to Ms. Callahan affidavits listing the amounts owed by her, and costs and fees. The Condominium and 515 DC submitted affidavits in June 2005 stating the amounts owed. Ms. Callahan filed a *pro se* supplement to her motion for reinstatement on July 13, 2005 stating, in part, why she was without counsel, and replying to the affidavits; she did not tender any monies for the court registry.

On July 14, 2005, the trial court issued an order primarily requiring Ms. Callahan to "deposit into the [court's] registry [by September 15, 2005,] as security for the Defendant[ ] and Intervenor and as a condition precedent for the reinstatement of [her] action cash or undertaking backed by surety acceptable to the court in the amount of $129,491.43." The order stated that if Ms. Callahan failed to deposit the required amount into the court's registry, her claim would be dismissed with prejudice. On August 2, 2005, Ms. Callahan

---

**3.** On September 7, 2004, 515 D.C. paid Wachovia Bank $50,000.00 for the note on the second mortgage. The line of credit from the second mortgage had been closed due to Ms.

Callahan's failure to make payments, and foreclosure proceedings on the second trust were scheduled.

moved for an extension of time to file a motion for reconsideration of the court's July 14, 2005 order. Ms. Callahan requested an extension until September 12, 2005 to file a motion for reconsideration on the basis that she was finalizing an agreement to retain new counsel, who would be unavailable until September 5, 2005. Defendant and intervenor opposed the motion. Ms. Callahan deposited the August condominium fee in the amount of $864 on August 1, 2005 with the court's registry and "anticipate[d] substantial, if not full compliance with th[e] court's March 2005 order directing escrow of all past due condo fees and [mortgage] payments by the first of September." On August 24, 2005, Ms. Callahan filed a praecipe with a $242.05 check earmarked as an August 2005 trust payment; she stated that no payment was due on the first mortgage because of a document from ABN AMRO Mortgage Group showing the principal of $53,700.00 "is fully paid, satisfied and discharged on April 27, 2005."

On September 13, 2005, Ms. Callahan's new counsel, submitted a motion for a two-day extension to file a motion for reconsideration of the court's July 14, 2005 order, and $889 was deposited into the court's registry ($864 plus a $25 late fee for the September condo fee). On September 14, 2005, Ms. Callahan filed a motion for reconsideration of the July order, which 4200 and 515 D.C. opposed. The next day, Ms. Callahan deposited $49,866.38 into the court's registry. Defendant and intervenor filed an opposition to the motion for reconsideration.

In an order dated September 29, 2005, the trial court granted Ms. Callahan's motion for an extension of time in which to file a motion for reconsideration of the court's July 14, 2005 order, but denied her motion for reconsideration, thereby dismissing her complaint with prejudice. The court reasoned that Ms. Callahan had not complied with the July 14, 2005 order requiring dismissal with prejudice in the event of default. The trial court believed that Ms. Callahan "litigated her case in the most dilatory manner imaginable and [ ] flagrantly flaunted the rules of the court and the rights of opposing parties to an expeditious resolution of this dispute on the merits."

## ANALYSIS

Ms. Callahan contends that the trial court's September 29, 2005, order dismissing her complaint with prejudice should be reversed, either under Super. Ct. Civ. R. 60(b) for good cause, or under Rule 59(e) as a matter of law. Specifically, she asserts with respect to Rule 59(e) that the trial court made an error of law "in requiring the Plaintiff Prevails Bond" and that the trial court "tacitly admitted that the Defendant Prevails Bond was the proper amount," that is, that the $49,866.88 (deemed sufficient as a supersedeas bond for the appeal) which she deposited in the court registry on September 15, 2005, "operate[d] to guarantee payment of the judgment *in the event defendant's appeal is not successful*" (emphasis in original), and that the trial court "was coming to an understanding that the June 2005 Affidavits of [515 D.C. and 4200] were purposely misleading." She indicates that the trial court's denial of intervenor's motion for summary judgment (which defendant supported) revealed that she was likely to prevail on the merits of the litigation. Furthermore, Ms. Callahan argues that she demonstrated good cause under Rule 60(b) because of excusable neglect (the "outrageous conduct" of her former trial counsel). She also asserts that her complaint should not have been dismissed because of the misrepresentation and fraud of 515 D.C. regarding the status of the

ABN AMRO trust, and due to its failure to disclose the actual interest acquired, thereby depriving her of an opportunity to cure any alleged default. Appellee 4200 claims that Ms. Callahan filed an untimely notice of appeal, and that in any event, she had actual notice of the trial court's orders and since she herself is an attorney cannot invoke excusable neglect due to the actions of her former counsel. Appellee 4200 also maintains that it and 515 D.C. were prejudiced by Ms. Callahan's delay and the trial court's requirement that $129,491.43 be paid into the court's registry as a condition of reinstatement "was an effort to equitably obviate the prejudice created by her dilatory conduct, *pendente lite.*"

■■■ We reiterate the standard of review governing the denial of Super. Ct. Civ. R. 59 and 60 motions: "Rule 59 motions that claim an error of law are reviewed *de novo, see e.g. Joeckel v. Disabled Am. Veterans,* 793 A.2d 1279, 1281 (D.C. 2002) ..., whereas Rule 60 motions are reviewed for abuse of discretion. *See Puckrein v. Jenkins,* 884 A.2d 46, 60 (D.C. 2005)." *Nichols v. First Union Nat'l Bank,* 905 A.2d 268, 272 n. 2 (D.C.2006). Rule 59(e) states that: "Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." "Rule 59 with its inflexible ten-day period applies only to a final, appealable judgment." *Williams v. Vel Rey Props., Inc.,* 699 A.2d 416, 419 (D.C.1997) (citations omitted); *see also* 12 MOORE'S FEDERAL PRACTICE § 59.31[5] ("Rule 54(a) defines 'judgment' as a decree and any order from which an appeal lies."). Super. Ct. Civ. R. 54(a), which is based on its federal counterpart, also defines " 'judgment' as 'a decree and any order from which an appeal lies.' " Rule 60(b) specifies in pertinent part:

> On motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; ... (3) fraud ..., misrepresentation, or other misconduct of an adverse party....

Rule 60(b) motions must "be made within a reasonable time, and for reasons (1) ... and (3) not more than one year after the judgment, order, or proceeding was entered or taken."

■■■ The trial court did not determine whether Ms. Callahan's motion for reconsideration was a Rule 59(e) or a Rule 60(b) motion, declaring in its September 29, 2005 order only that "[h]er motion for reconsideration, whether analyzed under Rule 59 or Rule 60, is without merit." The trial court's order of July 14, 2005, indicating that Ms. Callahan was required to deposit $129,491.43 into the court registry "on or before September 15, 2005," constituted an interlocutory order which did not become final until October 12, 2005, when it was entered on the docket. "[M]otions to reconsider interlocutory orders are not subject to the restrictive time limits imposed upon motions to reconsider final judgments." *Williams, supra,* 699 A.2d at 419 (citing *Wagoner v. Wagoner,* 938 F.2d 1120, 1122 n. 1 (10th Cir.1991)) (other citations omitted). Here, Ms. Callahan's "motion for reconsideration was nothing more than an interlocutory motion invoking the [trial] court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment ..., and, as such, did not call into play the timing and tolling considerations attendant upon motions to alter or amend judgment under [Super. Ct. Civ. R.] 59(e)." *Wagoner, supra,* 938 F.2d at 1122 n. 1 (citations omitted). Consequently, her appeal is timely, and there is no impediment to our examination of her argument that the trial

court's judgment should be reversed due to an error in law.

In essence, Ms. Callahan maintains that because the trial court denied the motion for summary judgment made by 515 DC and supported by 4200, and also accepted her deposit of $49,866.88 as sufficient for the appeal/supersedeas bond, it erred as a matter of law in requiring that she pay $129,491.43 to reinstate her complaint. She also complains that the inclusion of attorney fees and costs associated with the foreclosure in the calculation of the amount required for reinstatement of her complaint was improper because neither a statute nor documents governing the foreclosure authorized such fees and costs prior to the court's determination of their reasonableness. Given the affidavits submitted by 4200 and 515 D.C. in response to the court's order of June 8, 2005, and the lack of any affidavit from Ms. Callahan challenging the sums stated in those affidavits, and further, in light of the lack of citation to case law or other authority supporting her claim of legal error, we are unpersuaded that the trial court erred in denying the motion for reconsideration under Rule 59(e).

▮ We turn now to Ms. Callahan's argument that the trial court abused its discretion by denying her motion for reconsideration under Super. Ct. Civ. R. 60(b), either because of excusable neglect based on her former counsel's actions, or because of misrepresentation and fraud by 4200 and 515 D.C. "The disposition of a Rule 60(b) motion lies within the sound discretion of the trial court." *Starling v. Jephunneh Lawrence & Assocs.*, 495 A.2d 1157, 1159 (D.C.1985) (citations omitted). "Each case must be evaluated in light of its own particular facts taking into consideration whether the movant (1) had actual notice of the proceedings; (2) acted in good faith; (3) took prompt action; and (4)

presented an adequate defense. Prejudice to the non-moving party is also relevant." *Id.* at 1159–60 (citations omitted). In addition, we are mindful of the court's preference for judgment on the merits as we review the denial of a Rule 60(b) motion. *Id.* at 1160. Nevertheless, "we do not review or determine the merits of the underlying action but only decide whether there has been an abuse of discretion by the trial court." *Mourning v. APCOA Standard Parking, Inc.*, 828 A.2d 165, 167 (D.C.2003) (citing *State Farm Mutual Auto. Ins. Co. v. Brown*, 593 A.2d 184, 185 (D.C.1991)) (internal quotation marks and other citation omitted).

▮ Ms. Callahan contends that she trusted her lawyer because of his initial success in her case, but that he later engaged in outrageous conduct by not attending the pretrial conferences and sending her copies of the trial court's orders. But, the record shows that the trial court sent directly to Ms. Callahan its docketed orders of March 30, 2005 (dismissing her complaint without prejudice and conditioning reinstatement on Ms. Callahan's "payment into the registry of the [c]ourt [of] all condominium fees and trust payments as they become due"); June 8, 2005 (ordering 4200 and 515 D.C. to " 'file and mail to Plaintiff affidavits of costs and fees consistent with [its][o]rder'; and July 14, 2005) (ordering Ms. Callahan to deposit $129,491.43 in the court registry, to make other monthly payments, and indicating that upon failure to make the payments 'on or before September 15, 2005,' her 'complaint in this action shall stand dismissed with prejudice'). Thus, even though Ms. Callahan's former attorney may not have performed his duties as her counsel effectively, she nevertheless received actual notice of the court's orders, and as an attorney in her own right should have taken actions to avoid delay in responding to the

court's orders, or in seeking clarification or reversal of the conditions of the order at an earlier point in time, in order to avoid continuing prejudice to 4200 and 515 D.C. [must] demonstrate not only that [her] counsel was negligent, but that the movant [herself] was assiduous in pursuing [her] claim." *Bond v. Wilson,* 398 A.2d 21, 24 (D.C.1979) (citation omitted). The record does not show assiduousness on Ms. Callahan's part in pursuing her claim.

■ Viewing the entire record in this case, which reveals that Ms. Callahan failed to pay her condominium fees for months and, as the trial court found, "allowed her condominium unit to go to foreclosure," and "prevented [515 D.C.] for two full years from enjoying the benefits of his purchase," we cannot say that the trial court abused its discretion in conditioning reinstatement of her complaint on payment of the specified sum, regardless of whether one views the sum as a sanction or as a protective order bond. This is especially true since the evidence shows that 515 D.C. paid Wachovia Bank $50,000.00 to avoid a foreclosure sale, and further paid the principal and interest on a second trust in the amount of $32,791.50. Moreover, Ms. Callahan was required to pay the monthly condominium fee of $864.00 (and a sum for late payment of the fee), and she owed past due condominium assessments, late fees and interest at least from April 1, 2003 to June 30, 2005, as well as foreclosure costs and attorneys fees through June 30, 2005. The trial court's order of July 14, 2005 stated in footnote 1, that Ms. Callahan "disputes the amounts owed to both [4200 and 515 D.C.]" but indicated that "[t]hese disputes will be resolved in the final accounting in this action, depending on which party prevails."

The trial court did not explicitly identify the *Starling* factors, but its July 14 and September 29, 2005 orders reveal that it was cognizant of the factors—actual notice, good faith, prompt action, adequate defense, and prejudice to the non-moving party, *Starling, supra,* 495 A.2d at 1160. The trial court provided Ms. Callahan with actual notice of its orders. Nevertheless, even after receiving actual notice, Ms. Callahan neither acted in good faith nor took prompt action but rather, as the trial court found, conducted her litigation in a "reckless" and "dilatory manner," causing prejudice to 4200 and 515 DC by failing to pay her condominium assessments in a timely manner and in allowing her unit to fall to a threat of foreclosure. By indicating that it would reinstate the complaint upon payment of the required sum, it is at least arguable that the trial court may have thought that defendant and intervenor had no adequate defense to Ms. Callahan's complaint, but that is not crystal clear on this record. Furthermore, the trial court deemed payment of the sum necessary to avoid extreme prejudice to 4200 and 515 DC. And, although the trial court first considered dismissal of Ms. Callahan's action in its December 3, 2004 order, it repeatedly gave her an opportunity to end her dilatory actions and to proceed with her lawsuit, in fact delaying actual dismissal until September 29, 2005. In sum, on this record, we cannot say that the trial court abused its discretion in denying Ms. Callahan's motion under Rule 60(b)(1). *See Starling, Mourning, supra.*

Nor can we say that the trial court abused its discretion in denying Ms. Callahan's motion under Super. Ct. Civ. R. 60(b)(3) pertaining to misrepresentation and fraud. The record is devoid of any evidentiary basis pertaining to misrepresentation or fraud on the part of either 4200 or 515 DC. Ms. Callahan contends that 515 D.C. "made [a] material misrepresentation to the lower court . . . that it was the holder of the first trust" and "[h]ad

[515 D.C.] properly disclosed [it] had simply discharged the ABN AMRO trust, the court might have taken a different view . . ." Ms. Callahan further asserts that 515 D.C. acted fraudulently by not disclosing its interest in the property. Yet, Ms. Callahan received notice of the September 22, 2003 foreclosure sale and she and her attorney had access to information about the sale and the status of the purchaser in 2004 and 2005. Moreover, the trial court dismissed Ms. Callahan's case in March 25, 2005, without prejudice, and 515 D.C. did not discharge the ABN AMRO note until April 19, 2005. We cannot say that intervenor's failure to send correspondence to Ms. Callahan about the discharge after her case had been dismissed, albeit without prejudice, constituted either misrepresentation under Rule 60(b)(3) or a failure to comply with discovery as Ms. Callahan contends. Moreover, the record shows that 515 D.C. presented an affidavit to the trial court on June 17, 2005 stating that it had paid the ABN–AMRO note in the amount of $32,791.50. Based on the record before us, then, we see no evidentiary basis of misrepresentation or fraud sufficient to show that the trial court abused its discretion in denying Ms. Callahan's motion under Rule 60(b)(3).

Accordingly, for the foregoing reasons, we affirm the trial court's decision.

*So ordered.*