*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 21-CV-0358, 21-CV-0359, 21-CV-0390, 21-CV-0391,
21-CV-0579 & 21-CV-0580

DISTRICT OF COLUMBIA, APPELLANT,

V.

BET ACQUISITION CORP., *et al.*, APPELLEES.

Appeals from the Superior Court
of the District of Columbia
(2018-CA-002023-B & 2018-CA-006351-B)

(Hon. Hiram Puig-Lugo, Trial Judge)

(Argued September 28, 2022                    Decided July 17, 2025)

*Graham E. Phillips*, Assistant Attorney General for the District of Columbia at the time the brief was filed, with whom *Karl A. Racine*, Attorney General for the District of Columbia at the time the brief was filed, *Loren L. AliKhan*, Solicitor General at the time the brief was filed, *Caroline S. Van Zile*, Principal Deputy Solicitor General at the time the brief was filed, and *Carl J. Schifferle*, Deputy Solicitor General, were on the brief, for appellant.

*Caroline Petro Gately*, with whom *Theodore B. Randles* was on the brief, for appellees BET Acquisition Corp. and Black Entertainment Television LLC.

Before BECKWITH, MCLEESE, and HOWARD, *Associate Judges*.

PER CURIAM: Appellees BET Acquisition Corp. (Acquisition Corp.) and Black Entertainment Television LLC (BET LLC), whom we refer to collectively as BET when the distinction between them is not material, sued appellant, the District of Columbia, for breach of contract and tortious interference with a prospective business transaction. After a bench trial, the trial court entered judgment against the District in the amount of approximately $16 million plus certain future damages. The District filed post-judgment motions that were denied. The District now challenges the trial court's rulings in several respects. BET initially cross-appealed but abandoned its cross-appeals during briefing. We therefore dismiss the cross-appeals, Nos. 21-CV-0390 and 21-CV-0391.

We largely affirm the trial court's determination of liability, but we hold that BET LLC's claim of tortious interference was precluded for failure to provide timely pre-suit notice as required by D.C. Code § 12-309. We also largely uphold the trial court's reasoning with respect to the damages award, but we remand for further proceedings in two respects: (1) to adjust the damages award in light of our ruling on the claim of tortious interference, and (2) to reduce the amount of the damages award by $400,000 to reflect an undisputed credit that was overlooked in the trial court.

## I. Factual and Procedural Background

Except as noted, the following facts appear to be undisputed. These consolidated appeals involve three adjacent properties in the District of Columbia, which the parties refer to as Parcels B, C, and E. Parcel B is owned by the District but has been leased to Acquisition Corp. pursuant to what the parties refer to as Ground Lease One. Parcel C is also owned by the District and was leased to Acquisition Corp. pursuant to a separate lease that the parties refer to as Ground Lease Two. During the relevant time period, Parcel E was owned by BET LLC.

BET decided to sell its interest in the parcels. The District's Department of General Services (DGS) bid on the parcels as part of a plan to use them to operate a Circulator bus facility. DGS's bid did not succeed, and BET instead entered into a contract with Jemal's TEB LLC (Jemal's) to assign the two leases and sell Parcel E.

Under the ground-lease agreements, assignment of the leases required approval from the District, but the leases provide that the District cannot unreasonably withhold approval. Ground Lease Two has a provision permitting use of the leased property only as consistent with an attached protective covenant. The protective covenant provides that no use of the property "shall be permitted that, in the sole judgment of the [District,] . . . does not offer sufficient employment

opportunities for residents of the District of Columbia[] or . . . does not comply with the purposes for . . . development" set forth in the covenant. The protective covenant further provides, however, that the use limitations in the protective covenant "are subject to the provisions of any [l]ease." Ground Lease One does not contain such a protective covenant.

DGS denied BET's first request for approval of assignment on the stated ground that the request did not provide necessary information, including about the intended uses of the leased properties.

BET submitted a second request for approval of assignment that provided some information about the proposed uses of the leased properties. Specifically, the request included a statement on behalf of Jemal's that Jemal's would continue to use Parcel C as a supplemental parking lot. Jemal's also stated that it reserved the right to use the leased properties for any use permitted under the ground leases and applicable zoning requirements. DGS denied that request on the stated ground that further financial information about Jemal's was needed and that a lease guaranty would address that concern.

While BET was seeking approval to assign the leases, DGS and Jemal's were negotiating about a possible deal involving the parcels. DGS and Jemal's eventually

reached an agreement in principal to a deal pursuant to which Jemal's would have leased part of Parcel B and all of Parcels C and E to the District, primarily for use as a Circulator bus facility.

BET submitted a third request for approval of assignment, explaining that Jemal's had obtained a lease guaranty. DGS recommended that the District grant the third request. The District, however, determined that the approval decision should be made by the Mayor. The Mayor denied the request for approval. The letter communicating that denial, which was signed by the Director of DGS, stated two reasons for the denial: (1) BET had defaulted under the leases; and (2) the proposed assignment would contravene the leases' purposes of economic development and job creation, because there was inadequate confirmation that Jemal's would "adhere[] to the economic development objectives" of the leases. The District now acknowledges that the first stated reason was both incorrect and not the Mayor's "actual rationale," so we do not discuss that reason further.

BET then sued the District, alleging two counts of breach of contract and one count of tortious interference. After a bench trial initially focused on liability, the trial court found the District liable on all three counts. As a remedy, the trial court

ordered the District to consent to the assignments. The District provided its consent, but the deal between BET and Jemal's nevertheless fell through.

After hearing further evidence, the trial court awarded damages of approximately $16 million plus certain future damages.

## II. Analysis

### A. Pre-suit Notice

The District argues that BET LLC's claim of tortious interference is barred because BET LLC failed to provide timely pre-suit notice, as required by D.C. Code § 12-309 (action against District for unliquidated damages may not be maintained unless claimant gives written notice to Mayor of approximate time, place, cause, and circumstances of injury or damage within six months after injury or damage was sustained). Whether BET LLC complied with Section 12-309 is a question of law that this court reviews de novo. *District of Columbia v. Arnold & Porter*, 756 A.2d 427, 436 (D.C. 2000). We hold that BET LLC's claim of tortious interference is barred by Section 12-309.

Section 12-309's "notice requirement was enacted (1) to allow the District to investigate potential claims so that evidence may be gathered while still available,

(2) to enable the District to correct defective conditions, thus increasing public safety, and (3) to facilitate settlement of meritorious claims and resistance of frivolous ones." *Farris v. District of Columbia*, 257 A.3d 509, 514-15 (D.C. 2021) (ellipsis and internal quotation marks omitted). We "construe [Section 12-309's] notice requirement narrowly against claimants, because it is in derogation of the common law principle of sovereign immunity." *Id.* at 516 (internal quotation marks omitted). "The content requirements of any notice under section 12-309 are to be interpreted liberally, and in close cases doubts are to be resolved in favor of compliance." *Doe by Fein v. District of Columbia*, 697 A.2d 23, 27 (D.C. 1997).

BET LLC argues that it provided adequate and timely written notice through an October 2017 letter. We disagree. That letter, though sent by counsel for both BET LLC and Acquisition Corp., refers only to Acquisition Corp. and the ground leases Acquisition Corp. owned. Because the letter makes no mention of either BET LLC or Parcel E, which was the only pertinent interest of BET LLC, it did not give the Mayor notice of BET LLC's injury or damage. With respect to BET LLC, the letter thus on its face failed to meet Section 12-309's requirements. *See, e.g.*, *Arnold & Porter*, 756 A.2d at 437 (Section 12-309 notice sent by some plaintiffs did not suffice to provide notice with respect to other plaintiffs, even though plaintiffs were bringing claims arising out of same incident); *District of Columbia v. World Fire &*

*Marine Ins. Co.*, 68 A.2d 222, 224-25 (D.C. 1949) (same, even where one claimant's notice was sent by counsel who also represented a different, unnamed claimant).

BET LLC responds to this obstacle in four ways, none of which we find persuasive. First, BET LLC appears to suggest that the difference between it and Acquisition Corp. (which is BET LLC's wholly owned subsidiary) is a mere technicality, given that they are "affiliate[d]" entities. BET LLC and Acquisition Corp., however, were intentionally created as legally distinct entities. *See generally Off. of People's Couns. v. Pub. Serv. Comm'n*, 520 A.2d 677, 682 (D.C. 1987) (noting that "[corporate] parent and subsidiary comprise two wholly separate entities with individual property rights") (internal quotation marks omitted). BET LLC and Acquisition Corp. "elected to deal with the property involved in this case through unique and specific business enterprises," presumably because such "business arrangements generate various advantages." *Columbia Realty Venture v. District of Columbia*, 433 A.2d 1075, 1078 (D.C. 1981). "Having structured their business affairs in such a manner, [they] must operate consistently and not seek [different] treatment . . . when that would better suit their interests in a particular setting." *Id.* We thus treat BET LLC and Acquisition Corp. as distinct entities for purposes of Section 12-309.

Second, BET LLC relies on *Romer v. District of Columbia*, 449 A.2d 1097, 1100-02 (D.C 1982), where we held that timely pre-suit notice of injury by one spouse sufficed to permit the other spouse to raise a claim of loss of consortium. *See generally, e.g.*, *Crowley v. N. Am. Telecomm. Ass'n*, 691 A.2d 1169, 1174 (D.C. 1997) ("[A spouse] may recover damages for loss of consortium due to an injury negligently inflicted upon [the other spouse,] and . . . the term 'consortium' consists not only of material services, but also affection, companionship, sexual relations, and the customary amenities of married life.") (internal quotation marks omitted). As we explained, "[c]laims for loss of consortium are collateral to a spouse's claim for injuries; the two claims are tied together and the one (consortium) is dependent on the other (injuries)." *Romer*, 449 A.2d at 1101. We do not view the relationship between Acquisition Corp. and BET LLC as remotely comparable to the relationship between spouses. Moreover, the relationship between any injury to Acquisition Corp. and any injury to BET LLC seems quite a bit less direct than the relationship between injury to one spouse and the loss of consortium by the other spouse. We have previously declined "to extend *Romer* beyond the context of loss of consortium." *Chidel v. Hubbard*, 840 A.2d 689, 696 (D.C. 2004). We are equally disinclined to extend *Romer* to the circumstances of this case.

Third, BET LLC relies on various documents to argue that the Mayor had actual notice that denial of the request for assignment would injure not only Acquisition Corp. but also BET LLC. We have held, however, that "[w]hether the District had actual notice of [a plaintiff's] potential claim is not an appropriate consideration under section 12-309." *Doe by Fein*, 697 A.2d at 29. Rather, "the requirements of the statute as to written notice are mandatory, and . . . for failure to give such written notice the claim cannot be maintained." *Id.* (ellipsis, brackets, and internal quotation marks omitted).

Finally, BET LLC relies on *Shehyn v. District of Columbia*, 392 A.2d 1008 (D.C. 1978). In that case, we held that Section 12-309's notice requirement did not apply to claims that arose from the District's own conduct as a corporate entity, as opposed to that of a District employee, where in addition the District was "necessarily on notice of . . . the resulting injury." *Id.* at 1014. Specifically, in *Shehyn* the District leased a building, and the claims at issue were that the District damaged the building, failed to restore the property to its original condition, and failed to return certain property. *Id.* at 1010-12. We held that compliance with the requirements of Section 12-309 was not essential because the District itself would be directly liable on the claims and had "full notice" of the alleged injury. *Id.* at

1014-15. On the latter point, we emphasized that the District "took possession of the premises in the condition to which they were to have been restored." *Id.* at 1014.

The District argues, among other things, that the exception recognized in *Shehyn* (1) is contrary to the plain language of Section 12-309; and (2) is limited to claims involving breach of contract, as to which the court later held Section 12-309 categorically does not apply, *District of Columbia v. Campbell*, 580 A.2d 1295, 1302 (D.C. 1990). We need not address those broader contentions. Rather, we hold more narrowly that the exception recognized in *Shehyn* does not apply because the District did not "necessarily" have "full notice" of the injury that would be caused to BET LLC, which owned Parcel E, if the District declined to approve Acquisition Corp.'s request to assign the leases relating to Parcels B and C. *Shehyn*, 392 A.2d at 1014. Rather, the impact of such a refusal on the value of Parcel E was uncertain, and the District therefore did not "necessarily" have "full notice" of any such injury. *Id.*

For the foregoing reasons, we hold that BET LLC's claim of tortious interference is barred by Section 12-309. We therefore reverse the judgment in favor of BET LLC on that claim, vacate the award of damages, and remand for further proceedings.

## B. Liability

In pertinent part, the trial court's finding of liability rested on the following chain of reasoning. Under the ground leases, the District could not unreasonably withhold approval of BET's proposed assignment of the leases to Jemal's; Jemal's was objectively a reasonable assignee; the District's reason for refusing approval was that Jemal's had entered into an agreement in principle with the District that Jemal's would assign its interests in the parcels to the District for use as a Circulator bus facility; and it was unreasonable for the District to deny approval to the assignments on that basis. On the last point, the trial court's more detailed reasoning was that BET had proffered other uses for the leased property in the assignment request; Jemal's had promised to use the leased properties in a manner consistent with the leases; the negotiations between the District and Jemal's about possible assignment of the leases from Jemal's to the District were not reflected in the assignment request and reflected negotiations that did not include BET; the Mayor's disagreement with the agreement in principle between Jemal's and the District for use of leased properties as a Circulator bus facility did not justify denial of the assignment request; and "it [wa]s unreasonable for the District to withhold consent to a request for reassignment that [the District] did not fully and accurately consider."

At the outset, the District argues that the trial court was incorrect to review the District's refusal to grant approval for objective reasonableness. Rather, the District argues, the Mayor had sole discretion under the protective covenant to determine that the proposed use of the leased properties would be inconsistent with the purposes of the protective covenant. Thus, the District concludes, the trial court was required to uphold the Mayor's refusal as long as the Mayor acted in good faith.

The District's argument involves the interpretation of the leases and the protective covenant, which is an issue of law that we review de novo. *E.g.*, *Abdelrhman v. Ackerman*, 76 A.3d 883, 887 (D.C. 2013). We disagree with the District's view of the interaction between the provisions of Ground Lease Two and the protective covenant.

As previously noted, Ground Lease Two has a provision permitting use of the leased property only as consistent with the protective covenant. The protective covenant provides that no use of the property "shall be permitted that, in the sole judgment of the [District] . . . does not offer sufficient employment opportunities for residents of the District of Columbia[] or . . . does not comply with the purposes for . . . development" set forth in the covenant. Finally, the protective covenant further

provides that the use limitations in the protective covenant "are subject to the provisions of any [l]ease."

As we understand these provisions, the Mayor has sole discretion to prevent a given use of Parcel C (the property governed by Ground Lease Two) on the basis that in the District's view the given use would not meet the requirements of the protective covenant. It does not follow, however, that the Mayor has the sole discretion to withhold approval to a proposed assignment, subject only to a requirement that the Mayor act in good faith. Rather, both ground leases specifically require the Mayor to act reasonably in denying approval to a proposed assignment. So, for example, if the Mayor unreasonably, but in subjective good faith, concluded that a proposed assignment would result in the property at issue being used as a park, the Mayor would act unlawfully under the leases in denying the proposed assignment on the ground that that use would not meet the requirements of the protective covenant.

We thus turn to whether the Mayor's denial of the proposed assignment was unreasonable. We review deferentially the trial court's conclusion that the District unreasonably withheld approval of the assignments. *See, e.g.*, *Indep. Mgmt. Co. v. Anderson & Summers, LLC*, 874 A.2d 862, 869 (D.C. 2005) ("Considering the trial

judge's vantage point close to the action, while we are confined to a paper record, we owe a substantial measure of deference to the judge's determination of what was reasonable."). We hold that the trial court permissibly found that the District's refusal to approve the assignments was unreasonable.

The record supports the trial court's factual conclusion that the Mayor's reason for denying the request for approval was her belief that the leased properties would be used as a Circulator bus facility. Specifically, the Mayor testified that was her understanding. We do not understand the District to challenge this factual finding.

We see no clear error in the trial court's further conclusion that the Mayor's belief on this point was unreasonable. As the trial court explained, both BET and Jemal's indicated more generally that they planned to use the leased properties in a manner that was consistent with the leases. The trial court could permissibly conclude that if the Mayor thought that use of the leased properties for a Circulator bus facility was inconsistent with the purposes of the protective covenant, the Mayor's reasonable option was to prevent that particular use (at least with respect to Parcel C, which was subject to the protective covenant), either by making clear that the Mayor would not approve such a use under the protective covenant or, perhaps,

by withdrawing the District's agreement in principle to such a use. In our view, it can permissibly be viewed as unreasonable for the District instead to deny BET's request for approval of an assignment on the ground that the District had negotiated with the proposed assignee an agreement in principle that the leased properties would be used in a manner that the District itself viewed as inconsistent with the requirements of the protective covenant.

## C. Damages

The District challenges the trial court's damages award in three respects. We uphold two of the challenged rulings but grant partial relief with respect to an issue that the District raises for the first time on appeal.

### 1. Value of Parcel E

One category of damages ("diminution in value") rested on a comparison between the price for BET's interests in the parcels that was reflected in the 2017 contract between BET and Jemal's ($26.75 million) and the value of BET's interests in the parcels at the time of the damages trial in 2021. The trial court determined that the current value of BET's interests in the parcels was $18 million. The District argues that the $18 million figure rested on the trial court's erroneous belief that

BET's expert had testified that Parcel E was worth approximately $4 million in 2021. In fact, the District argues, although BET's expert had written a report stating that Parcel E was worth approximately $4 million in 2016, that report was not admitted into evidence and the expert explicitly declined to opine at the damages trial as to the value of Parcel E.

The District raised this argument in a post-trial motion. The trial court denied relief on that ground, explaining that (1) BET's expert had offered testimony as to the 2016 value of Parcel E; (2) it was appropriate to consider that evidence in determining the current value of Parcel E; and (3) the trial court had not relied solely on BET's expert's testimony in determining the current value of Parcel E.

The District does not argue that the testimony about the 2016 appraisal of Parcel E by BET's expert should have been excluded. To the extent the District argues that the trial court should have given the testimony "no weight," we see no basis for reversal. A trial court's decision as to the value of a property is at bottom a finding of fact to which we owe deference. *CHH Cap. Hotel Partners, LP v. District of Columbia*, 152 A.3d 591, 598 (D.C. 2017) ("It is within the trial court's broad discretion as the finder of fact to sift through the evidence and arrive at an independent valuation.") (internal quotation marks omitted). The District cites no

decision of this or any other court supporting its argument that the trial court as factfinder was obliged to give the testimony about the 2016 appraisal no weight. The limited authority that we have found points in the opposite direction. *See, e.g.*, *Ellyson v. Ellyson*, No. 24 CO 0026, 2025 WL 627611, at *5 (Ohio Ct. App. Feb. 26, 2025) (claim that appraisals were outdated went to weight rather than admissibility); *Corotoman, Inc. v. Cent. W. Va. Reg'l Airport Auth., Inc.*, No. 2:21-cv-00545, 2023 WL 4834954, at *7 (S.D. W. Va. July 27, 2023) (although appraisal was "too outdated" to by itself establish current value of property, appraisal did "provide insight into the approximate potential value" of property); *cf. Carnahan v. Carnahan*, No. 17A03-1606-DR-1537, 2017 WL 587268, at *6 (Ind. Ct. App. Feb. 14, 2017) (unpublished table decision) (affirming despite claim that trial court impermissibly relied on outdated appraisal in determining value of property, where other evidence supported trial court's valuation decision).

The District also argues that the trial court erroneously stated that BET's expert "offered testimony as to the 2016 value" of Parcel E. We are not persuaded by this argument. The District is correct that BET's expert did not opine as to the current value Parcel E. The District is also correct that BET's expert did not directly testify at trial that his 2016 report accurately stated the value of Parcel E in 2016. Nevertheless, the trial court was correct that BET's expert offered testimony about

the 2016 value of Parcel E, accepting the assertion by counsel for the District that the 2016 report valued Parcel E at approximately $4 million.

Finally, we note that the trial court's order denying post-judgment relief did not very fully explain the precise way in which the trial court considered the testimony about the 2016 appraisal of Parcel E in determining the overall diminution in the value of BET's interests in the parcels. The District has not challenged the trial court's ruling on that basis, however, and we follow our usual course of not considering arguments that have not been raised on appeal. *See, e.g.*, *Battle v. District of Columbia*, 80 A.3d 1036, 1040 n.5 (D.C. 2013) ("[T]his court generally does not consider questions not properly raised and briefed on appeal.").

## 2. Post-judgment sale

As previously noted, the trial court determined that BET's interests in the parcels were worth $18 million. The trial court made that determination in February 2021. In July 2021, the District sought post-judgment relief under Super. Ct. R. Civ. Pro. 60(b) on the ground that BET had transferred its interests in the parcels in May 2021 for approximately $20 million. According to the District, the May 2021 sale established that BET's actual loss was approximately $2 million less than the trial court had awarded BET in damages.

The trial court denied relief. The trial court noted that the District relied on two specific subsections of Rule 60(b): 60(b)(5) and 60(b)(6). The trial court concluded that Rule 60(b)(5) was inapplicable. The District does not explicitly challenge that ruling on appeal. We therefore do not address the question whether Rule 60(b)(5) might have been applicable.

With respect to Rule 60(b)(6), the trial court explained that that provision "is intended for unusual and extraordinary situations justifying an exception to the overriding policy of finality." *Puckrein v. Jenkins*, 884 A.2d 46, 59 (D.C. 2005) (internal quotation marks omitted). The trial court concluded that the subsequent sale of BET's interests in the parcels for an amount different than the value that the trial court found in determining the value of those interests did not warrant post-judgment relief. We review the trial court's order for abuse of discretion. *E.g.*, *Callahan v. 4200 Cathedral Condo.*, 934 A.2d 348, 353 (D.C. 2007). We see no abuse of discretion.

The District's argument assumes that the sale of BET's interests in the parcels for $20 million in July 2021 definitively establishes that the actual value of those interests in February 2021 was also $20 million. We see no adequate basis for that assumption. We do not doubt that evidence of the purchase price in July 2021 would

be quite relevant to the actual value of BET's interests in the parcels in February 2021. *See, e.g.*, *United States v. 1.604 Acres of Land*, 844 F. Supp. 2d 685, 688-89 (E.D. Va. 2011) (noting that purchase price of property less than year earlier was "extremely probative of fair market value") (internal quotation marks omitted). A trial court is not required to reopen a final judgment under Rule 60(b)(6), however, simply because new evidence raises a question about the accuracy of a factual finding. *See, e.g.*, *D'Angelo v. State Farm Fire & Cas. Co.*, 32 F. App'x 604, 605 (2d Cir. 2002) ("Material offered in support of a motion to vacate under Rule 60(b)(6) must be highly convincing material.").

We conclude that the trial court acted within its discretion in concluding that the July 2021 sale did not justify granting relief from the final judgment in this case. Without more, that the sale price in July 2021 was $2 million higher (approximately 11% higher) than the trial court's estimated value in February 2021 is not compelling proof that the trial court's estimate was wrong. Property values can change substantially in relatively brief periods of time. *See, e.g.*, *Leonardis v. Leonardis*, 30 So. 3d 568, 570 (Fla. Dist. Ct. App. 2010) (property values decreased 20-30% during fifteen-month period). Moreover, purchasers sometimes pay more than the fair market value of property. *See, e.g.*, *Fairy-Mart v. Marathon Petro. Co.*, No. 3:17-cv-1195 (MPS), 2017 WL 5140514, at *13 (D. Conn. Nov. 6, 2017) (expert

testified that "a buyer might attribute a value higher than fair market value to a particular acquisition because of [the buyer's] own idiosyncratic circumstances"). Additionally, the sale took place during the COVID-19 pandemic, which had crosscutting effects on the real estate market. *See, e.g.*, *Nat'l R.R. Passenger Corp. (Amtrak) v. 78,441 Square Feet More or Less of Land & Improvements*, No. 21-CV-5810 (VEC), 2024 WL 379853, at *3 (S.D.N.Y. Feb. 1, 2024) ("The COVID-19 pandemic is clearly a 'relevant fact' that a willing seller and willing buyer would consider in an efficient market that adjusts for all major events. Sometimes the market overcorrects; sometimes it undercorrects.").

The District cites no case, and we are aware of no case, in which a trial court was held to have abused its discretion by declining to reopen an assessment of the fair market value of property based on a post-judgment sale of the property. We affirm the trial court's denial of relief on this point.

### 3. Setoff

The trial court reduced the award of damages by $1,500,000 to account for a deposit that Jemal's had paid to BET and BET retained once the contract between BET and Jemal's fell through. For the first time on appeal, the District asks for a further reduction of $400,000 to reflect additional payments that Jemal's made and

BET retained. BET does not dispute the District's argument on the merits, arguing only that the District received the adjustment it requested in the trial court and that the District's argument in this court comes too late. We have discretion to consider arguments not properly raised in the trial court. *E.g.*, *District of Columbia v. Helen Dwight Reid Educ. Found.*, 766 A.2d 28, 33 n.3 (D.C. 2001). For several reasons, we exercise that discretion in this case. First, the merits of the issue are undisputed. Second, we are remanding on other grounds for further consideration of damages. Third, we see no unfair prejudice to BET. We therefore direct the trial court on remand to reduce the award of damages to BET by $400,000.

For the foregoing reasons, we affirm the judgment in part, vacate the judgment in part, and remand for further proceedings.

*So ordered.*